UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HENRY JORDAN | ) | |
| | ) | |
| | ) | |
| *A.k.a.* HANK JORDAN, | ) | |
| *A.k.a.* HENRY BROADWELL, | ) | No.    1:09-cv-96/1:04-cr-129 |
| *A.k.a.* DOUGLAS HENRY | ) | *Judge Curtis L. Collier* |
| BROADWELL, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM

In this post conviction action Petitioner, Henry Jordan ("Jordan" or "Petitioner"), seeks

to  have his federal sentence[1] vacated, set aside and corrected pursuant to 28 U.S.C. § 2255

(Criminal Court File No. 70).[2]  He raises two claims; first, he alleges counsel in his prosecution

failed to communicate to him a plea agreement offer from the government and second, that

counsel labored under a conflict of interest in the representation.   Both of these amounted to

inefficient assistance of counsel, argues Petitioner.   Although the evidence is not as clear as to

the first issue as the Court would like, it reluctantly concludes Petitioner, who has the burden of

proof on his claims, fails to satisfy his required burden and therefore his § 2255 motion must be

**DENIED**.


## I.    BACKGROUND

### A.    Underlying Criminal Conviction

---

[1]     The undersigned is familiar with Petitioner's prosecution and sentencing since his
criminal case was assigned to the undersigned.  He entered a guilty plea to three of the charges
and after the pleas were accepted and he was adjudicated guilty, he was sentenced by the
undersigned.

[2]     Each document will be identified by the Court File Number assigned to it in the
underlying criminal case.

Jordan was indicted on August 24, 2004 and charged with being a felon in possession of a firearm and ammunition in violation of Title 18, U.S.C. §§ 922(g)(1) and 924(e) (Count 1) and possession of marijuana with intent to distribute in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count 2). On October 19, 2004, Jordan's counsel filed a motion to extend the deadline for reaching a plea agreement. (Court File No. 14). On January 28, 2005, the Court issued an order containing new dates for the case including a date of February 14, 2005, in which to reach a plea agreement. (Court File No. 21). On February 11, 2005, Jordan's retained counsel, Howard Upchurch, filed a motion seeking an extension of this deadline. In the motion he stated

> he [would] be in Texas the majority of the week of February 14. Counsel for the Defendant only recently received the plea offer submitted by the Government, and will not have ample time to contact his client to discuss the offer prior to the current cut-off date. As such, the undersigned would request that the plea bargaining deadline be extended through and until Wednesday, March 23, 2005, to enable the undersigned and the Defendant to review the Government's plea offer in detail."

(Court File No. 22).

On March 8, 2005, the Government obtained a superseding indictment against Jordan. (Court File No. 25). In this indictment the original two counts remained the same. A new third court was added that charged Jordan with possessing a firearm in furtherance of the drug trafficking crime alleged in Court Two. This charge was brought pursuant to Title 18, U.S.C. § 924(c)(1). On March 11, 2005, Jordan through his counsel filed a motion to continue the March 21, 2005 trial date because he had been informed of the superseding indictment by the assigned Assistant United States Attorney. (Court File No. 26). The Court granted the motion (Court File No. 28) and ordered that the defendant appear for arraignment on the superseding indictment. At that arraignment, held on July 1, 2005, the case was reset for trial on August 22, 2005. (Court File No. 29). Prior to the trial date, Jordan filed a notice of intent to enter pleas of guilty to all three of the counts in the superseding indictment. (Court File No. 32).

Case 1:04-cr-00129-TRM-SKL   Document 100   Filed 10/25/12   Page 2 of 27   PageID #: 549

On October 6, 2005, Jordan pleaded guilty to all three counts of the superseding indictment without a written plea agreement, that is, the first count of being a felon in possession of a firearm, the second count of possession with intent to distribute marijuana, and the third count of possessing a firearm in furtherance of the drug trafficking count. Because he qualified as an armed career criminal due to his prior criminal conviction, he faced a mandatory minimum of fifteen years (180 months) on the first count. The third count carried a mandatory minimum sentence of five years (60 months) and the law required that the sentence on that count be consecutive to any other sentence. Operating within these constraints, the Court sentenced Jordan to the minimum possible sentence, that is a sentence of 240 months imprisonment, consisting of concurrent terms of imprisonment of 180 months on Court One and 60 months on Count Two, and a consecutive term of 60 months of Count Three (Criminal Court File Nos. 43, 45). Jordan pursued a direct appeal and the United States Court of Appeals for the Sixth Circuit affirmed his convictions and sentence on February 2, 2009. *United States v. Jordan*, 308 Fed. Appx. 990 (6th Cir. 2009).

### B. Procedural Background on Petition's § 2255 Claim

Jordan timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 70). Following initial consideration of the motion, as required by Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Government was directed to file a response. This Court denied in part Jordan's motion with the exception of two claims, which are the claims under consideration here. An evidentiary hearing was ordered to determine whether Jordan's counsel ineffectively failed to communicate the government's plea offer to him and whether counsel labored under a

conflict of interest when he represented Jordan. In addition, the Court had counsel appointed to represent Jordan in the evidentiary hearing.[3]

The evidentiary hearing was held on January 30, 2011. At the conclusion of the evidentiary hearing, the Court directed the parties to file briefs.

The post-hearing briefs have now been filed and this matter is ripe for review. After reviewing the record, the applicable law, and the parties post-hearing briefs, the Court concludes Jordan's has not satisfied his burden of proof on his claims of ineffective assistance of counsel and the § 2255 motion will be **DENIED** in its entirety (Criminal Court File No. 70).

## II.    ANALYSIS

As stated earlier, Jordan's two remaining claims raised by his motion allege his counsel rendered him ineffective assistance by failing to communicate to him a plea agreement whereby he could plead guilty to Counts Two and Three and that his counsel labored under a conflict of interest.

In this § 2255 proceeding, Jordan has the burden of establishing his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The Court will address Jordan's two claims of ineffective assistance of counsel separately, after discussing the applicable law.

### A.    Applicable Law

---

[3]    Mr. Thomas Greenholtz accepted the appointment to represent Mr. Jordan in pursuing his § 2255 claims. The Court commends Mr. Greenholtz for the thoroughness and vigor of his representation. Mr. Greenholtz presented Mr. Jordan's claims in a much more focused and understandable manner than Mr. Jordan ever could. He also presented evidence on Mr. Jordan's behalf that Mr. Jordan would never have been able to marshal. The Court is greatly appreciative of Mr. Greenholtz's efforts on Mr. Jordan's behalf.

The Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

The Supreme Court recently readdressed the Sixth Amendment right to effective assistance of counsel as it applies at the plea bargaining stage in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) and *Missouri v. Frye,* 132 S. Ct. 1399 (2012), and reiterated that defendants are entitled to effective assistance of counsel at this critical stage. *Cooper,* 132 S. Ct. at 1384; *Frye,* 132 S. Ct. at 1406. In *Cooper,* as a result of defense counsel's erroneous advice, the defendant rejected a plea offer and proceeded to trial which resulted in a much harsher result than the plea offer. The issue before the *Cooper* court was how to apply the *Strickland* prejudice test where a plea offer was rejected based on counsel's deficient performance and the defendant was convicted after a full and fair jury trial. *Cooper,* 132 S. Ct. at 1384. The court concluded the proper remedy was for the government to reoffer the plea and if the defendant accepts it, then the trial court exercises its discretion regarding whether to resentence. *Id.* at 1391.

In *Frye*, defense counsel failed to inform the defendant of a plea offer. After the plea lapsed, the defendant pleaded guilty but received a harsher sentence. Citing *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985), the *Frye* court explained that generally, when a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pleaded guilty, but would have insisted on standing

trial. *Frye,* 132 S. Ct. at 1409-10. "*Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Id.* As a general rule, defense attorneys have a duty to communicate formal plea offers to their clients and a failure to communicate the prosecutor's written plea offer to their client before it expires amounts to deficient performance. *Id.* at 1408. In such a case, "*Strickland's* inquiry into whether the result of the proceeding would have been different requires looking to . . . whether [the defendant] would have accepted the offer to plead pursuant to the terms earlier proposed." *Id.* at 1410 (internal citation and punctuation omitted). [4]

Specifically, the Supreme Court instructed:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. . . . [,]a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion . . . To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* at 1409.

---

[4] Although some circuits require a defendant to support his own assertion that he would have accepted the offer with additional objective evidence, the Sixth Circuit "has not explicitly adopted such a requirement," although in *Turner v. Tennessee*, 858 F.2d 1201 (6th Cir. 1988), the court approved a district court's decision which concluded the defendant had offered sufficient objective evidence that he would have accepted the government's plea. *Magana v. Hofbauer*, 263 F.3d 542, 548 n. 1 (6th Cir. 2001) In *Dedvukovic v. Martin*, 36 Fed. Appx. 795 (6th Cir. 2002), *available at* 2002 WL 453704, noting that it has been held "that a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer[,]" the *Dedvukovic* court concluded the district court did not err when it relied upon the disparity, along with the unrefuted testimony of the petitioner that trial counsel never explained to him the significance of the state's offer or the difference in his sentence that a guilty plea might have made, despite his request for the information. *Id.* at 798.

**B.      Failure to Communicate Plea Offer**

Jordan contends his attorney failed to communicate a formal plea offer to him which would have permitted him to plead guilty to Counts Two and Three of the superseding indictment and have Count One dismissed–a Count for which he received a 180 month sentence.  Jordan argues that "[b]ased on the 'plea offer' of 7/14/2005, Petitioner could have agreed upon a sentence of 60 months on Count Two; and 60 months on Count Three, to be served consecutive to Count Two, for a total of 120 months." In his § 2255 motion, Jordan maintains "[t]here is no doubt that petitioner would have accepted this plea offer, if made aware of it, due to the fact that on 10/06/2005, Petitioner entered into a guilty plea for [all] counts of the Superseding Indictment, and ultimately received a far more severe sentence of 180 months, plus the 60 months for 924(c)(1) conviction for a total of 240 months imprisonment." (Criminal Court File No. 70, p. 5(a)).  Jordan contends he only became aware of the plea offer upon receipt of his file from counsel (Criminal Court File No. 70, p. 5(a)).  Trial counsel denies his claims and avers the plea agreement was delivered to Jordan and in a subsequent conversation, he rejected the plea agreement because he did not want to plead guilty to a weapon count.

There is no dispute that a written plea agreement was offered by the government.  The parties are in agreement on this. Therefore, the issue before the Court is whether Jordan has proven by a preponderance of the evidence that counsel failed to communicate the government's written plea agreement offer to him, and that there is a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

*1.   Trial Counsel's Evidentiary Hearing Testimony*

The plea agreement at issue in this matter is the formal written plea agreement offered on July 14, 2005, after the superseding indictment was issued (Defendant's Exhibit 5). At the outset, it is important to note that the circumstances surrounding these claims occurred approximately seven years ago. Given the passage of time it is unsurprising that counsel does not have a specific recollection of all that transpired regarding his communications with Jordan. He does recall some of the details of the circumstances and conversations but with little degree of specificity. However, he did retain his file on the case and some of his file documents do in fact reflect he had conversations with Jordan regarding the offered plea agreement and that support his general office practice and procedure when handling a criminal case.

Mr. Upchurch testified he thinks the July 14 plea agreement was communicated to Jordan because he left written instructions for Deborah Summers, one of his office staff, the day after he received the plea offer, to have one of the staff deliver the plea agreement and a letter to Jordan at the Bradley County Jail (Criminal Court File No. 96, pp. 18, 58). Although he was not able to recollect whether he had a subsequent conversation with office staff to verify the plea agreement was actually delivered at that time, the written instructions which he had left for staff to deliver the plea agreement reflected a red check which is the staff's method of indicating to him that his instructions had been followed (Criminal Court File No. 96, pp. 18-19). Since counsel was in trial on July 15, 2005, he sent the letter, dated July 15, 2005, to Jordan with the plea agreement which explained the agreement included a plea to the § 924 offense; noted that Jordan had told him he would not plead to a firearm count; explained counsel had again talked with his wife who persisted in her March and April position that she had no helpful testimony; advised Jordan that counsel failed to see any defense to that charge; and encouraged Jordan to think about ways to help himself (Criminal Court File No. 96, p. 59).

This testimony was supported by a copy of the handwritten notes to his staff and Jordan (Government's Exhibit 5, Defendant's Exhibit 6).

Counsel testified he had no reason to believe the plea agreement was not delivered to Jordan as the members of his staff were reliable (Criminal Court File No. 96, p. 60). In addition, counsel specifically testified he "had communications with [Jordan] about the plea agreement before the deadline[,]" and further testified "I had a conversation with [Jordan] on July 19. I know I had that conversation because it's noted." (Criminal Court File No. 96, p. 36). Counsel's July 19 conversation was evidenced by counsel's handwritten note (Government's Exhibit 6). At the top of the note counsel had written "7/19/11" which he testified meant he spoke to Jordan on July 19, 2005, at 11 o'clock. The note reiterated that Jordan said he would not plead to a weapons charge, he still thought his wife[5] would help him, counsel could not get him to understand ownership/possession prong of the charge and counsel "[n]eed[ed] to research the benefits of acceptance and responsibility, career offender/violent offender . . . how affects." (Criminal Court File No. 96, p. 61). Although counsel did not have a specific recollection of the conversation, he testified based on his notes and normal practice, the purpose of that conversation was to discuss the plea agreement as the plea bargain deadline was going to expire on July 25, 2005. Counsel testified he would have noted if Jordan had told him he never received the plea agreement (Criminal Court File No. 96, p. 62). Moreover, the note

---

[5] At the time of Jordan's underlying criminal proceedings he was married but his wife subsequently obtained a divorce. The Court will refer to her as his wife when referring to testimony and documents identifying her as such, and as his ex-wife when referring to and analyzing her evidentiary hearing testimony.

9

indicates Jordan rejected the plea agreement offer as the note specifies–"Call Dietrick–no plea on weapon." (Government's Exhibit 8).[6]

Counsel explained Jordan wanted the best deal possible without having to plead to either of the two counts pertaining to weapons (Criminal Court File No. 96, p. 79). Counsel testified that Jordan's position all along was he was not going to plead to anything involving a weapon, and he only changed his mind in that regard just prior to counsel filing Jordan's notice of intent to plead guilty on August 17, 2005, (Criminal Court File No. 96, pp. 26-27). Counsel had conversations with Jordan prior to August 17, 2005, preparing the case for trial and was ready for Jordan's August 22, 2005, trial when Jordan decided to plead guilty. It was only after counsel had a conversation with Jordan and his wife that Jordan decided to enter a plea of guilty (Criminal Court File No. 96, pp. 28, 37).

It was counsel's opinion the only defense Jordan had to any of the charges was the validity of the search warrant, but that defense was eliminated when the Court denied Jordan's motion to suppress. Counsel further explained that Jordan suggested presenting a case based on false testimony (Criminal Court File No. 96, p. 31). Although Jordan and his ex-wife denied having a conference call with Mr. Upchurch, counsel recollected he was either on a conference call with Jordan and his wife or he and Jordan were on the phone and his wife was in counsel's office on August 17, 2005. Based on their discussion, Jordan instructed counsel to file the notice of intent to plead guilty (Criminal Court File No. 96, p. 38). Jordan, however, subsequently sent a letter to counsel dated September 29, 2005, wherein he continued to maintain his innocence on the § 924(c) count but also notified counsel he would cooperate with

---

[6]     Robert Dietrick was one of the Assistant United States Attorneys prosecuting Jordan on his underlying federal criminal case.

Case 1:04-cr-00129-TRM-SKL   Document 100   Filed 10/25/12   Page 10 of 27   PageID #: 557

the government (Government Exhibit, 13).[7]  On October 6, 2005, Jordan entered his pleas of guilty.

Thereafter, on November 16, 2005, Jordan sent counsel a letter indicating he wanted to withdraw his guilty plea and alleging counsel talked him into "'copping out to a 924(c), something I didn't ever . . . or even do.'" (Criminal Court File No. 96, pp. 41, 66).  Counsel responded in writing to Jordan explaining he had no defense to the 924(c) charge and Jordan's proposed testimony on the issue was not supported by corroborating evidence and "in some instances, [were] lies." (Government's Exhibit 9).  Counsel further explained his lack of defense to the charges, as well as the perils and pitfalls of Jordan presenting testimony not corroborated by evidence and in some instances "lies[,]" were discussed fully when preparing for trial.  In addition, counsel reminded Jordan that neither his wife nor her relatives could help or would testify at trial as their testimony would contradict his (Criminal Court File No. 96, pp. 66-69, Government Exhibit 9).

## 2. *Ms. Diane Glavin Broadwell's Evidentiary Hearing Testimony*

In addition to calling Mr. Upchurch as a witness, Jordan also presented his ex-wife, Diane Glavin Broadwell ("Ms. Broadwell"), the mother of his two teenage children, as a witness.  Just as with Mr. Upchurch, Ms. Broadwell was unable to recall specifics of what had happened so many years ago. On direct examination she testified she hired Mr. Upchurch to represent Jordan, never participated in a telephone conversation with counsel and Jordan, and

---

[7]     In this letter Jordan references a conversation that occurred between him and counsel when he was first incarcerated regarding him cooperating with the government.  Jordan states that even though he did not want to cooperate, he has to think about his boys and he directs counsel to notify the United States Attorney that he can give names of the "Rhea County Cartell [sic]," make drug buys, and provide information on an old murder case (Government's Exhibit 13).

does not know whether Mr. Upchurch communicated a plea offer to her ex-husband (Criminal Court File No. 84-85).

When asked by the Court whether she recalled an instance when she was on a telephone call with Mr. Upchurch and her husband, like a conference or three-way call Ms. Broadwell testified "No sir. That never happened." When asked if she recalled being in Mr. Upchurch's office at some point when her husband was on the telephone talking with counsel, she could not recall (Criminal Court File No. 96, p. 90).

On cross-examination Ms. Broadwell testified she divorced Jordan in 2006 but was not awarded alimony or child support because he was incarcerated. Jordan, however, has told her that if he gets out of jail he would try to provide financial support for her and their two children (Criminal Court File No. 96, pp. 86-87). On cross-examination Ms. Broadwell elaborated on her contacts with counsel, explaining she met with counsel in his office and paid him, they discussed Jordan wanting her to testify the weapons and drugs belonged to her, and they had a phone conversation one afternoon where counsel told her he had met with federal prosecutors and "that the deal was that he - - if he pled guilty to all of this, he would get 20 years, but if he took it to trial and they had enough evidence to convict him, that he would most likely get life" (Criminal Court File No. 96, pp. 87-88).

Ms. Broadwell tried to convince Jordan to plead guilty and she remembered there were plea bargain deadlines mentioned but she could not remember the exact dates. When asked how many conversations she had with Jordan about pleading she testified she could only remember one but she was sure there were several (Criminal Court File No. 96, pp. 88-90). Ms. Broadwell admitted Jordan asked her to testify the guns and marijuana belonged to her, but she refused because it was a lie (Criminal Court File No. 96, pp. 85-86). Although she admitted

Jordan had asked her to lie, she testified she was not aware of Mr. Upchurch ever misrepresenting anything or lying to her (Criminal Court File No. 96, p. 90).

### 3. *Jordan's Evidentiary Hearing Testimony*

Jordan was much more specific in his testimony than either Mr. Upchurch or Ms. Broadwell. Although Jordan testified he never received the July plea agreement and never discussed its terms with counsel, he admitted he did not want to plead guilty to the weapon counts because he was trying to get a lower sentence (Criminal Court File No. 95-99). When counsel questioned Jordan about Mr. Upchurch's testimony that Jordan did not want to plead to anything dealing with possession of a firearm in furtherance of a drug-trafficking crime, Jordan did not deny that he took that position, but rather, explained he "would have pled to a lesser charge. . . . I was trying to just get anything down so I could go be with my boys again. I was guilty." (Criminal Court File No. 96, pp. 95-96). Jordan testified he kept telling trial counsel he was not going to take a plea on that weapon charge because he "was hoping that somehow or another they would reduce the sentence to get me to plea." (Criminal Court File No. 96, p. 96). Jordan denied ever receiving the July plea agreement and testified the first time he saw the agreement was after he contacted the Board of Professional Responsibilities requesting them to ask Mr. Upchurch to send his file to him. Jordan denied ever receiving any hand-delivered document from counsel, meeting with him at the Bradley County Jail about the plea agreement, having a phone conversation about the plea agreement offer, and rejecting the plea agreement (Criminal Court File No. 96, pp. 97-101).

Jordan testified he pleaded guilty to the § 924 offense because he figured they had enough evidence to convict him but if he had known about the plea agreement offer he would have accepted it "because I could have went back home to my boys, I think, in maybe ten years,

instead of being away from them their whole life." (Criminal Court File No. 96, pp. 104-05). Jordan testified counsel never discussed the dangers of entering a guilty plea after the deadline passed and he never realized a deadline passed (Criminal Court File No. 96, pp. 104-05).[8]

On cross-examination Jordan explained he really did not ask his wife to lie about the guns because he only asked her to claim the guns that actually belonged to her, but he admitted he asked her to lie and say the marijuana belonged to her. In addition, Jordan testified he asked his wife to lie at the very beginning of the case in an effort to take some of the charges away from him. Jordan admitted to receiving the letter from counsel reminding him of the July 25, 2005, plea deadline but testified "my eyes is kind of bad, and I didn't see where it said about the plea bargain . . ." (Criminal Court File No. 96, p. 116) Jordan admitted that after receiving counsel's letter notifying him Ms. Broadwell would not be testifying in his favor, he wrote counsel that he was not an armed career criminal because he only had two violent felonies and he was not guilty of the § 924(c) charge because he did not have the guns involved with the marijuana. Jordan admitted he told counsel he was not guilty of the weapon charges but suggested counsel should have worked on an *Alford* plea (Criminal Court File No. 96, p. 120). Jordan testified that during his rearraignment[9] he objected to the fact that he possessed the

---

[8] Notably, counsel's July 8, 2005, correspondence to Jordan states: "The Court established the plea bargaining deadline for July 25. Given the fact that you are facing a life prison [sic] based upon your criminal history, perhaps it would be beneficial for us to discuss a potential resolution of these charges with the U.S. Attorney." (Government's Exhibit 4). Although Jordan testified he never realized a deadline for a guilty plea had passed, it has long been the practice in this district for the Magistrate Judge to inform defendants at their arraignments of all of the deadlines in the case both orally and in writing. These deadlines of course would include the deadline for reaching a plea agreement.

[9] This would be the proceeding on October 6, 2005 where Jordan entered his guilty pleas before this Court and not the arraignment on the superceding indictment held before Magistrate Judge Susan K. Lee on July 1, 2005 (Court File Nos. 29, 30, 31).

firearms to protect his marijuana business and he still believes he "may" not be guilty of the § 924(c) count (Criminal Court File No. 96, pp. 128-29).

### 4. Discussion

Jordan bears the burden of proving his allegations by a preponderance of the evidence. Jordan claims he never was told about the plea offer. However, he admits he attempted to have false testimony used in his defense. He also denies seeing what was in the July 15, 2005 letter from Mr. Upchurch regarding the plea deadline. So while he is very specific on some matters, his credibility leaves a lot to be desired. He does corroborate Mr. Upchurch's testimony that he was adamant about not pleading guilty to a charge involving guns. While Mr. Upchurch's testimony was not as specific as one would like, it is supported by much of what Jordan stated, by Ms. Broadwell in some respects, and evidence from Mr. Upchurch's file.[10] Based upon the Court's credibility determination, the Court concludes Jordan has failed to sustain his burden of proof as to the allegation counsel failed to communicate the plea offer to him.

### a. Performance Prong

The Court will discuss in more detail its analysis of the conflicting evidence. In support of his claim, Jordan has only his own testimony to support it. He offers no contemporaneous evidence to buttress his claim. There is no evidence that prior to the entry of his guilty pleas, he had ever expressed a willingness to plead guilty to a charge involving guns. The government, on the other hand, has presented trial counsel's testimony along with supporting documentary evidence.

First, there is counsel's July 8, 2005, letter reminding Jordan of the plea deadline and suggesting it would be beneficial to discuss a potential resolution of the charges with the United

---

[10] There is no allegation the file was not maintain contemporaneously with the criminal proceeding.

States Attorney (Government's Exhibit 4). Second, counsel's handwritten note to his staff directing the delivery of the proposed plea agreement, the letter he wrote to Jordan regarding the delivery of the plea agreement, and the check indicating staff completed the task (Government Exhibit 5). And finally, although Mr. Upchurch's specific recollections were somewhat vague at times, given he was attempting to recollect conversations that occurred approximately seven years ago, he explained it was his practice to discuss plea offers with clients. His testimony is supported by his handwritten note indicating he had a discussion about the plea agreement with Jordan after it was delivered by his office staff but Jordan continued to deny he possessed any weapon and rejected the plea offer (Government Exhibit 6).

As mentioned above, counsel's July 19 handwritten note specifies "Call Dietrick – no plea on weapon" (Government Exhibit 6).[11] In addition, although counsel had no specific recollection of discussing the 15-year mandatory minimum sentence on the § 924(e) charge with Jordan, counsel testified he was certain he did because "[i]n cases like these I try to do that all the time, to let an individual know what his exposure was . . . [b]ut Mr. Jordan, he wasn't going to plead to anything involving a weapon, and all of my conversations I would have with him were wasting his time, you know, it wasn't going to help us prepare the case for trial, and I just had a distinct impression from him time and time again that anything involving weapons did not interest him because he didn't want to plead to it." (Criminal Court File No. 96, p. 25-26). Notably, counsel's March 14, 2005, correspondence to Jordan, in pertinent part, notified him counsel had attended the final pretrial conference, reviewed the charges in the original indictment, estimated his sentencing guidelines of 262-360 months based on the original

---

[11] Robert Dietrick was one of the Assistant United States Attorney prosecuting Jordan on his underlying criminal case.

indictment, notified him of the superseding indictment, and suggested he consider cooperating with the government given the number of years he was facing (Government's Exhibit 2).

In light of the supporting information from his file and Ms. Broadwell's testimony regarding Jordan's request that she falsely testify the guns and marijuana belong to her, the Court deems Mr. Upchurch's testimony to be credible.

Counsel explained the reason Jordan finally instructed him to file a notice of intent to plead guilty was because the acceptance of responsibility was extremely important and would reduce the guideline on the § 924(c) from 360 months to near 262 months (Criminal Court File No. 96,p. 38). Counsel further testified that all along it was Jordan's position he was not pleading guilty to anything involving a weapon and that even after entering the guilty plea, he persisted in his claim he was not guilty of the weapon charges (Criminal Court File No. 96, pp. 42-43).

Jordan admitted during his testimony that he had in fact attempted to get Ms. Broadwell to perjure herself. He quibbled by saying he only wanted her to claim the guns that actually belonged to her but then admitted he also tried to get her to lie and say the marijuana belonged to her and not him. He denies reading the part of the letter from Mr. Upchurch regarding the plea agreement deadline but admits receiving the letter and reading other parts of it. And while he admits he is guilty of the charges, he still indicated even after his pleas and sentencing that he harbored some doubts as to his guilt on the firearms charge.

Given this evidence the most reasonable interpretation is that Jordan wanted to avoid a conviction and sentence at all cost. He therefore set about trying to concoct a false defense premised on perjured testimony. While this effort was underway he was not interested in any guilty plea, whether through a plea agreement or otherwise. He also did not understand the

legal basis for the § 924(c) count. After his effort to procure perjured testimony failed and he was facing the prospect of a trial, he realized he had no defense to the charges and would likely be convicted of all charges. He also understood that tangible benefits result from a guilty plea. Therefore, on the eve of trial, he decided to plead guilty but the plea agreement deadline had already passed.[12] Until he made that decision he would have rejected any plea agreement that required a guilty plea to a gun charge. Counsel communicated the plea offer to him but Jordan did not consider it because of his focus on beating the charges at trial with perjured testimony. The Court also concludes it is a possibility because of Jordan's mindset at the time, he has simply forgotten the discussion regarding the plea offer with Mr. Upchurch.

Accordingly, Jordan has failed to establish, by a preponderance of the evidence, counsel failed to communicate the plea agreement offer to him.

### b. Prejudice Prong

In addition, the Court observes Jordan has not satisfied his burden as to the prejudice prong on this claim of ineffective assistance of counsel. Jordan has not offered credible evidence demonstrating a reasonable probability he would have accepted the guilty plea prior to the plea bargaining deadline set by the Court. Indeed, aside from the fact counsel's July 19 note specifies Jordan would not plead to the weapons count, the evidence before the Court indicates Jordan would not have accepted the plea agreement as he continued to maintain his innocence on the weapons counts in the hope the government would eventually dismiss the weapon charges in exchange for a guilty plea to the marijuana count as he had proposed in his letter to counsel after notification of the superseding indictment.

---

[12] It is the practice of this Court that once the plea agreement deadline passes, the Court will not accept a plea agreement and will only accept a guilty plea to all outstanding counts. Of course, a defendant always has the right to plead guilty without a plea agreement to some counts of a multi-count indictment and proceed to trial on the remaining counts.

Case 1:04-cr-00129-TRM-SKL   Document 100   Filed 10/25/12   Page 18 of 27   PageID #: 565

The evidence demonstrates Jordan had no intention of accepting any plea offer that required him to plead guilty to the § 924(c) count. Indeed, it was not until a few days prior to trial that Jordan finally came to the realization the government was not going to dismiss the § 924(c) count and he was facing a very substantial sentence as he was likely going to be convicted on all counts (Criminal Court File No. 96, 15). This conclusion is supported by Jordan's September 29, 2005 letter to counsel, which was written after the filing of the notice of intent to plead guilty, wherein he notifies counsel that although he is not guilty of the § 924(c) charge, "they hold all the Aces in the deck I only have a pair of deuces, so I have to do what I got to do." (Government Exhibit 13).

Counsel explained Jordan "did not want to discuss pleading to any weapons charges," and "[t]hat was his position all along." (Criminal Court File No. 96, p. 74). Counsel further explained that he "couldn't negotiate away the weapons charge, and that's what he wanted me to do. He wanted me to negotiate away the weapons charge, and that was an impossibility. . . . He wanted me to get him a deal that did not involve weapons . . . he wanted the best deal possible without the weapons." (Criminal Court File No. 96, p. 79). Jordan does not deny he kept telling counsel he was not going to plead guilty to anything dealing with guns, but rather explained he took that position because he "was hoping that somehow or another way they would reduce the sentence to get him to plea." (Criminal Court File No. 96, p. 96). It is instructive that if this was his strategy he never communicated this strategy to Mr. Upchurch, that is get me the best deal you can even if it involves a gun charge but do not let the government know that until you have exhausted all other negotiating avenues.

The evidence before the Court indicates it was only after Jordan realized the government

Case 1:04-cr-00129-TRM-SKL   Document 100   Filed 10/25/12   Page 19 of 27   PageID #: 566

was not going to agree to dismiss the § 924 count and his case was going to proceed to trial, he decided to enter a plea and at least obtain the benefit of acceptance of responsibility and try to obtain the benefit of a §5K1.1 motion by cooperating with the government. After meeting with counsel after the superseding indictment was issued, Jordan wrote counsel a letter stating he would plead to the marijuana count and a two point enhancement for the gun but he was not guilty of the other counts; a position which he maintained until several days before his trial (Government Exhibit 15). There is no evidence in the record supporting Jordan's testimony he would have pleaded guilty to the offered plea agreement because he could have returned home to his boys "in maybe ten years[.]" (Criminal Court file No. 96, p. 104). First, Jordan's sentencing guideline range i.e., 262-327 months, is the same under either scenario–with or without the plea agreement. As counsel's notes reflect, Jordan did not believe he was guilty of the weapons counts because he did not believe he actually used, possessed, or owned the weapons in relation to the drug trafficking offense. Jordan's evidentiary hearing testimony indicates he still does not believe he is guilty of the § 924(c) count or that he is a career criminal (Criminal Court File No. 96, p. 129). Thus, the Court is unable to conclude there is a reasonable probability Jordan would have accepted the government's offer and pleaded guilty.

There are several other things in the record supporting the conclusion Jordan has failed to satisfy his evidentiary burden to demonstrate a reasonable probability he would have pleaded guilty to the offered plea agreement. First, in his § 2255 motion, Jordan claims that based on the July plea offer he could have agreed on a sentence of two consecutive 60 month sentences. There is no evidence, however, the government offered such a sentence or that they could have or would have offered a 120-month sentence. Indeed, as previously stated, nothing in the proposed plea agreement referenced a 120-month sentence, and the plea agreement specifically

provided that sentencing was in the sole discretion of the Court and the government would make no recommendation to a specific sentence. Thus, contrary to Jordan's claim in his § 2255, he could not have accepted the plea agreement offer and agreed on a 120-month sentence.[13]

Second, even after he pleaded guilty, Jordan persisted with his claim of innocence to the weapon counts. Jordan wrote counsel stating he was not guilty of the § 924(c) count and that counsel talked him into pleading guilty (Criminal Court File No. 96, pp. 136-37). Third, as of the date of the evidentiary hearing, Jordan continued in his belief he was not guilty of the § 924(c) count, testifying he would have entered an *Alford* plea because he believes there was enough evidence to plead but he still does not believe he was possessing the guns to protect his drug business (Criminal Court File No. 96, p. 129).

Fourth, when asked why he was adamant he did not want to plead to anything dealing with guns in furtherance of a drug trafficking crime, Jordan did not deny that was the stance he took with trial counsel but rather explained he would have pleaded to a lesser charge because he was "trying to just get anything down so [he] could go be with [his] boys again." Jordan further explained he "was hoping that somehow or another they would reduce the sentence to get [him] to plea." (Criminal Court File No. 96, p. 96). Finally, Jordan explained the only reason he pleaded guilty five days before trial without a plea agreement was because he figured they had enough evidence to convict him on the § 924(c) count (Criminal Court File No. 96, p. 104). On cross-examination Jordan testified he never wanted to go to trial; he tried to a get a deal the

---

[13]     Jordan may be assuming he would have received the 60 month mandatory minimum on the § 924(c) charge and a consecutive 60 month sentence on the drug charge for a total of 120 months. However, the maximum sentence was life and he should have assumed his sentence would have been within the applicable sentencing guidelines which, given his criminal history, would have been much higher than 120 months.

whole time; and if he had not pleaded guilty he believes he would have been sentenced to jail for the rest of his life (Criminal Court File No. 96, p. 141). As previous noted, the sentencing guidelines under the terms of the July plea offer would have been 262-327 months which are the same guidelines to which he was exposed based on his guilty plea, therefore, he had nothing to lose by holding out in hopes of a better plea offer.

In sum, it is undisputed Jordan was adamant he did not want to plead guilty to the § 924(c) count, when he did plead guilty he disagreed he possessed firearms in furtherance of a drug trafficking crime, and even at the evidentiary hearing he maintained that belief. Jordan's continued stance he is not guilty of the § 924(c) count, suggests he would not have entered into the July plea agreement and the only reason he pleaded guilty a few days prior to trial was he finally accepted the reality the government was not going to dismiss the § 924(c) count. In addition, the probation department has confirmed that the sentencing guidelines are the same i.e., 262-327 months under both the terms of the July plea offer and Jordan's guilty plea. Thus, even assuming counsel did not communicate the plea agreement offer to Jordan, the evidence outlined above precludes the Court from finding that Jordan has demonstrated a reasonably probability he would have accepted and pleaded guilty to the July 2005 plea agreement offer.

Thus, Jordan has not satisfied his evidentiary burden. Rather, the evidence demonstrates counsel had the plea agreement delivered to Jordan, counsel discussed the plea agreement with him, Jordan rejected the offer to plead guilty in the hope of receiving an offer without the § 924(c) count, and he only entered a guilty plea once he came to the realization the government was not going to dismiss the § 924(c) weapon charge. Accordingly, Jordan is not entitled to relief on his claim counsel failed to communicate the plea agreement to him.

### C. Conflict of Interest

Jordan's second and final claim is counsel had a conflict of interest when he simultaneously represented both Jordan and Donnie Burton ("Burton") because Burton was a government witness against Jordan. In addition, Jordan claims counsel prevented him from cooperating with the government by providing information about Burton's illegal activities (Criminal Court File No. 70, p. 6(a)). Although Jordan's testimony regarding this claim is confusing and at times, contradictory, the Court is able to discern that Jordan has failed to meet his burden of proof as to this claim. Specifically, he failed to present any evidence whatsoever that Burton was a government witness against him; thus, this claim fails. As explained below, Jordan has also failed to present any evidence to support his allegation that counsel prevented him from providing evidence to the government about Burton.

To establish a violation of the Sixth Amendment, Jordan must demonstrate counsel "actively represented conflicting interests" and that an actual conflict of interest adversely affected counsel's performance. *Wilson v. Parker*, 515 F.3d 682, 697-98 (6th Cir. 2008), *cert. denied,* 130 S.Ct. 113 (2009). The conflict must be "real or genuine, as opposed to [ ] hypothetical," *Moss v. United States*, 323 F.3d 445, 467 n. 23 (6th Cir.), *cert. denied,* 540 U.S. 879 (2003) and must have adversely affected "counsel['s] . . . basic strategic decisions." *Id*. at 466 (quotations omitted).

In his § 2255 motion, Jordan explained that state law enforcement officers executed a search warrant at his residence on January 15, 2004, and discovered marijuana, firearms, ammunition, drug paraphernalia, and cash. Jordan was arrested and transported to the Rhea County Sheriff's Department. According to Jordan, prior to posting bond, an officer invited Jordan to cooperate in securing the arrest of Burton for possession/distribution of marijuana. Jordan declined the invitation and later met with Burton and informed him of the Rhea County

Sheriff'sDepartment's request. Jordan asserts that approximately sixty days later, without his assistance, Burton was arrested by the Rhea County Sheriff's Department for possession of marijuana. Jordan advised Burton to hire Mr. Upchurch, which he did. The parties agree Mr. Upchurch represented them simultaneously.

Jordan was arrested on September 10, 2004, for the instant federal offenses. Jordan contends once his suppression motion was denied on December 15, 2004, counsel suggested he consider cooperating with the government to reduce his sentence (Criminal Court File No. 70, p. 6(a)). Jordan's claim, as alleged in his § 2255 motion, then becomes somewhat confusing as he alleges counsel specifically mentioned Janet Price, whom authorities had investigated for a homicide, and Donnie Burton. Jordan claims he advised counsel he would consider cooperating, and in fact, later that day provided details of the Janet Price investigation and attempted to give details of Burton but Mr. Upchurch told him none of the authorities was interested in Burton. Jordan contends counsel prevented him from communicating information about Burton to the authorities because counsel also represented Burton in state court. According to Jordan, this conflict prevented him from cooperating with authorities in an effort to reduce his federal sentence. During the evidentiary hearing Jordan testified somewhat inconsistent with his allegations in his § 2255 motion.

Unlike the allegation in his motion wherein he seemingly claimed counsel first specifically mentioned him cooperating against Donnie Burton, during the evidentiary hearing Jordan testified that during one of counsel's visits, he advised counsel he could possibly provide information on Burton.

> I just told him - - you know, he was asking me about what I had said earlier about Janet Price and about Donnie, and I said, "Well, you know, me and Donnie's the one that's doing this together.

I'll be willing to work with the government for some kind of reduction.

(Criminal Court File No. 96, p. 106). Jordan further explained he and Burton were bringing marijuana to Rhea County and selling it. According to Jordan, counsel seemed interested at first but later said no one was interested in Burton. Although Jordan testified he first told Mr. Upchurch about Burton in February or March 2005, he subsequently stated he mentioned Burton to counsel the first time he came to see him after the bond hearing. Yet, he also testified counsel did not tell him no one was interested in Burton until July 2005, presumably.[14] Jordan explained he wrote the September 29, 2005, letter saying he had information on people that were not counsel's clients because he figured " if [counsel was] not interested in Donnie, you know, if [he] won't go say anything about Donnie or whatever, maybe [Jordan] could get something from somebody else." Jordan testified he did not mention Burton in the letter because counsel had already told him no one was interested in that information (Criminal Court File No. 96, pp. 106-09). Jordan subsequently testified he thought he put the information about Burton in a letter (Criminal Court File No. 96, p. 109), but no such letter was ever introduced into evidence even though Jordan had obtained a copy of his file from trial counsel. In addition, on cross-examination Jordan testified he did not mention Burton in any of the letters (Criminal Court File No. 96, p. 130).

Mr. Upchurch, however, denied Jordan ever offered to provide any evidence against Burton. Specifically, Mr. Upchurch stated Jordan provided the names of several people for which he could provide information and subsequently followed-up with a letter that indicated

---

[14] The record reflects Jordan was arrested and attended initial appearance proceedings on September 10, 2004, and he was denied bond at his detention hearing on September 15, 2004 (Criminal Court File Nos. 4, 6). Thus, it appears Jordan contends counsel told him in July 2005 that no one was interested in Burton.

none of the names Jordan provided was of clients of Mr. Upchurch's (Criminal Court File No. 96, p. 46). Mr. Upchurch testified that if Jordan had given him information about Donald Burton, he would have withdrawn from Jordan's case, explaining that "given the significant allegations we had, if I could have found a way to die with dignity, so to speak, I probably would have. But I had no information about Donnie Burton, at least not - - not from [Jordan]." (Criminal Court File No. 96, p. 47). Counsel testified Jordan gave him a lot of information about numerous individual and his notes reflected he was given over a dozen names by Jordan, which counsel identified during his deposition,[15] and Donnie Burton was not one of them (Criminal Court File No. 96, p. 72). The Court finds Mr. Upchurch's testimony to be credible.

In addition, Jordan's April 18, 2005, and September 29, 2005 letters to Mr. Upchurch telling counsel he was willing to work with the government and he thought he knew who the government wanted made no mention of Burton but specified none of the people he had information about was counsel's clients (Government Exhibit 14). Notably, Burton had been arrested in March 2004 and was being prosecuted by the state on drug charges during the same time period that Jordan's federal criminal case was pending, Jordan had previously declined a request by law enforcement to provide information on Burton, and Jordan had advised Burton to hire Mr. Upchurch as defense counsel in his state drug case. Thus, Jordan was well aware of the simultaneous representation and alleged possible conflict. Other than Jordan's allegation he would be willing to provide information on Burton but counsel informed him no one was interested, he has submitted no proof supporting his claim counsel prevented him from giving the government information about Burton or any proof he actually had any information about Burton of which the government was unaware. Consequently, Jordan has not proven by a

---

[15] This portion of counsel's deposition was not made a part of the record.

Case 1:04-cr-00129-TRM-SKL   Document 100   Filed 10/25/12   Page 26 of 27   PageID #: 573

preponderance of the evidence he provided any information to counsel on Burton and he suffered prejudice by counsel's alleged refusal to notify the government. Accordingly, relief will be **DENIED** on Jordan's claim that counsel performed under a conflict of interest.

## III. CONCLUSION

Based on the record, including evidence presented at the hearing and the parties' filings, the Court concludes Jordan has failed to establish his claims he did not receive effective assistance of counsel in violation of his Sixth Amendment rights. The record does not support his claim and in fact contains evidence that refutes Jordan's claims that counsel failed to communicate a plea offer to him, that there is a reasonable probability he would have accepted the plea offer, and that counsel operated under a conflict of interest when he represented him in his underlying federal criminal case. Accordingly, Jordan's § 2255 motion will be **DENIED** in its entirety and this matter will be **DISMISSED**.

An appropriate order shall enter.


/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**